United States District Court
Middle District of Florida
Jacksonville Division

**STEVEN BARFIELD,**

  *Plaintiff,*

v.                 No. 3:14-CV-1031-J-PDB

**CSX TRANSPORTATION, INC.,**

  *Defendant.*

---

# Order on Motions in Limine

Steven Barfield contends his employer, CSX Transportation, Inc. ("CSXT"), retaliated against him for reporting sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17. He seeks punitive and other damages. Doc. 24 at 1−2. Before the Court are the parties' motions in limine,[1] Docs. 80, 82, 83, 84, 85, 86, responses, Docs. 91, 92, 93, 96, 97, 98, and replies, Docs. 100, 101, 102, 104, 105.

## I. Background

Barfield began working for CSXT in June 2008. Doc. 79 at 11. In January 2013, he began working as foreman of the S-1 production team. Doc. 79 at 12. One of the team's primary responsibilities was tamping railroad switches and ties. Doc. 79 at 5, 12. John Brigman, Dennis Rhodes, and Jerrell Adcox were managers then, and each

---

[1]At the final pretrial conference on January 23, 2017, the Court granted CSXT's second motion in limine (seeking exclusion of evidence of alleged retaliation against other CSXT employees), Doc. 81, based on Barfield's counsel's representation that Barfield does not intend to introduce evidence of other retaliation unless counsel for CSXT presses him on why he feared retaliation. Doc. 106 at 59−60.

supervised Barfield at some point when he was a foreman. Doc. 79 at 12. Either Rhodes or Adcox was Barfield's usual supervisor, but Brigman directly supervised him for a week in July 2013. Doc. 79 at 12.

According to Barfield and his wife, in May 2013, she visited the S-1 team's worksite with their children, and Brigman commented on her appearance and suggested she "come see him" instead of Barfield. Doc. 79 at 2. According to Barfield, Brigman continued to "emasculate" him by making other comments in front of coworkers. Doc. 79 at 2–3.

In July 2013, Brigman and Barfield were riding in a truck when Barfield's wife called. Doc. 79 at 3. According to the Barfields, Brigman took Barfield's phone and told her she "shouldn't be wasting [her] time" with Barfield, that Brigman "could please [her] in ways [Barfield] couldn't," and that "his tongue was longer than [Barfield's] d---." Doc. 51-9 at 15–16; *see* Doc. 79 at 3. According to Barfield, Brigman later bragged to coworkers, including Rhodes, about his conduct, and continued to make similar comments to Barfield. Doc. 79 at 3.

On July 31, 2013, the S-1 team was assigned to surface track and a crossover switch at a location called HK Tower. Doc. 79 at 12. According to CSXT, Barfield left an inexperienced employee in charge of performing work on one of the tracks at the switch and failed to check the employee's work. Doc. 79 at 6. A signal maintainer reported problems associated with the switch and requested help fixing it. Doc. 79 at 6. A local maintenance team was assigned to fix the problems but could not finish before the signal maintainer had to leave for the day, resulting in the switch being taken out of service overnight. Doc. 79 at 6–7.

On August 1, 2013, Rhodes told Barfield the crossover switch had been out of service all night and five trains had been delayed. Doc. 79 at 7, 12. According to CSXT, Rhodes and his supervisor, James Hinnant, decided that day to disqualify Barfield from the foreman position based on his failure to ensure the quality of his team's

2

work. Doc. 79 at 7. That evening, Barfield emailed Hinnant's supervisor, Samuel Piccirillo, stating he had heard Brigman and Rhodes were planning to disqualify him the next day "because [Hinnant] wants Alvin [Walters] to be his foreman." Doc. 79 at 8; Doc. 46-2 at 101.

On August 4, 2013, Barfield called the CSXT Ethics Helpline and complained about the comments Brigman had allegedly made to his wife. Doc. 79 at 8, 13; Doc. 80 at 3; Doc. 80-1. The complaint was summarized by someone at CSXT:

> Approximately on April 28, 2013, Chris told Natasha that she needed to come and stay with him, Chris asked Natasha what she is doing with this loser, and Chris told Natasha what he wanted to do to her. Steve said Chris' unprofessional conduct created a sexually harassing environment. Chris told Natasha that she could stay with him if Steve did not let her come to the jamboree, Chris told Natasha that his tongue is longer than Steve's d-ck and she can stay in Chris' room during a telephone conversation at the jamboree in front of Steve. Steve said Chris got Natasha's cellular telephone number from his cellular telephone. Chris called Natasha. Steve said that he might be disqualified this week. Steve said Dennis Rhodes, Manager, might be aware of Chris' conduct. Steve said he might be terminated because of his concerns about Chris' conduct.

Doc. 80-1 at 3.

On August 6, 2013, Brigman delivered a letter from Rhodes to Barfield notifying him he had been disqualified from the foreman position. Doc. 79 at 8, 13.

Under a collective bargaining agreement, Barfield had a right to challenge the disqualification at a hearing, which he did. Doc. 79 at 8, 13. On August 14, 2013, he received an amended disqualification letter, and on August 19, 2013, he called the CSXT Ethics Helpline again to repeat his earlier allegations of harassment and complain about his disqualification. Doc. 46-2 at 109; Doc. 46-22 at 2.

On September 17, 2013, Piccirillo conducted a hearing on Barfield's disqualification. Doc. 79 at 14. At the hearing, Rhodes testified that, on August 1, he had been "notified by Mr. Troy Conner that we failed to catch the head block ties off at HK Tower. And we delayed five (5) trains," while Barfield offered evidence demonstrating no train delay. Doc. 92 at 2–3. For the hearing, Barfield's wife

3

submitted a written statement contending Brigman might have left his prior position with a police department amid allegations of sexual harassment. Doc. 46-7 at 23−28.

According to Barfield, Brigman "involved himself in the disciplinary process and ethics-complaint process" by delivering the notice of disqualification, trying to get statements on his behalf, discussing Barfield's complaint with Rhodes before the hearing, providing key testimony at the hearing, and directing human-resources personnel to interview particular people. Doc. 79 at 4. On October 4, 2013, Piccirillo upheld Barfield's disqualification. Doc. 79 at 14. Barfield did not challenge the disqualification all the way through the union grievance process to the Public Law Board. Doc. 85-1.

Matthew Charron, CSXT's manager of employee services, investigated Barfield's complaints and, on November 5, 2013, issued reports finding no evidence of sexual harassment or retaliation. Doc. 46-21; Doc. 46-23. Based on Charron's findings, on November 19, 2013, CSXT issued a warning to Brigman, explaining his "misconduct constitutes a clear violation of the Code of Ethics as it relates to treating others with respect and dignity, as well as the Company's policy against workplace harassment." Doc. 46-14 at 122–23.

## II.    Law

To establish a Title VII retaliation claim, a plaintiff must prove he had engaged in a protected activity, his employer had then taken an adverse employment action, his employer had taken the adverse employment action because of the plaintiff's protected activity, and the plaintiff had suffered damages because of the adverse employment action. *See* Eleventh Circuit Pattern Instruction—Civil No. 4.22 (2013). An activity is a protected activity if it was based on the plaintiff's good-faith, reasonable believe that his employer had discriminated against him because of a protected trait. *Id.* A plaintiff has a reasonable belief if a reasonable person would, under the circumstances, believe that the employer discriminated against him

4

because of a protected trait. *Id.* The plaintiff does not have to prove that his employer had discriminated against him because of the protected trait; only that he had a good-faith, reasonable belief that his employer had done so. *Id.*

"Punitive damages are limited … to cases in which the employer has engaged in intentional [retaliation] and has done so with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 529–30 (1999) (internal quotation marks omitted). "[A]n employer may not be vicariously liable for the [retaliatory] employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with Title VII." *Id.* at 545 (internal quotation marks omitted).

A motion in limine is a motion "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). Its purpose is "to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial." *Hodgetts v. City of Venice, Fla.*, No. 8:11-cv-00144-EAK-EAJ, 2011 WL 2192810, at *1 (M.D. Fla. Jun. 6, 2011) (unpublished). The moving party "has the burden of demonstrating that the evidence is inadmissible on any relevant ground." *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010); *accord Chaney v. State Farm Mut. Auto. Ins. Co.*, No. 6:14-cv-1043-Orl-41DAB, 2015 WL 12838839, at *1 (M.D. Fla. Dec. 9, 2015) (unpublished).

"A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context." *Luce*, 469 U.S. at 41. If evidence is not clearly inadmissible for any purpose, courts will deny or defer ruling on the motion in limine and decide issues of foundation, relevance, and prejudice in context at trial. *See Arthrex, Inc. v. Parcus Med., LLC*, No. 2:10–cv–151–FtM–38DNF, 2014 WL 2700802, at *1 (M.D. Fla. Jun. 13, 2014) (unpublished); *Stewart v. Hooters of Am., Inc.*, No. 8:04-cv-40-T-17-MAP, 2007 WL 1752873, at *1 (M.D. Fla. Jun. 18, 2007) (unpublished); *Hodgetts*, 2011 WL 2192810, at *1.

A motion in limine should not be a substitute for a motion for summary judgment or any other peremptory ruling. 21 Fed. Prac. & Proc. Evid. § 5037.18 (2d ed. 2016). It is "not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried." *Peeler v. KVH Indus., Inc.*, No. 8:12-cv-1584-T-33MAP, 2014 WL 117101, at *2 (M.D. Fla. Jan. 13, 2014) (unpublished).

Evidence is relevant if "it has a tendency to make a fact more or less probable than it would be without the evidence; and … the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is inadmissible." Fed. R. Evid. 402. Even if testimony is relevant, a court may exclude it if "its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. But exclusion "is an extraordinary remedy which the district court should use sparingly, and the balance should be struck in favor of admissibility." *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003) (internal quotation marks and alterations omitted). Testimony excluded based on those dangers should be limited to "matter[s] of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Roark*, 753 F.2d 991, 994 (11th Cir. 1985).

### III. Analysis

#### A. *Barfield's First Motion*

Barfield seeks to exclude evidence of a claim under the Federal Railroad Safety Act that has since been dismissed. Doc. 82. CSXT responds it no longer objects to the motion and "agrees no evidence regarding [his] alleged safety complaint should be admitted." Doc. 96 at 1. With no objection, the Court **grants** the motion in limine.

6

B.  *Barfield's Second Motion*

Barfield seeks to exclude evidence of CSXT's "post hoc" justification of its discipline of him; specifically, evidence of train delay not introduced at the disciplinary hearing to rebut evidence he had produced showing no train delay. Doc. 83. He argues all that matters is what the decisionmakers knew when they disqualified him and evidence they did not know cannot be used to justify their actions. Doc. 83 at 3–4.

CSXT responds it should be allowed to introduce evidence of train delay to "lend credence to CSXT's assertion that its contemporaneous justification was not merely a pretext for discrimination." Doc. 92 at 1. To distinguish a case on which Barfield relies, CSXT observes, "here, the train delay was not an 'after the fact' or 'completely uncontemplated' justification. It was considered and relied upon both by Rhodes and Hinnant at the time the disqualification decision was made on August 1, 2013, and when Piccirillo affirmed the disqualification after the internal hearing." Doc. 92 at 2.

Barfield replies that because "Piccirillo's state of mind at the time he made the disqualification decision is what is relevant, … CSX [cannot] rebut evidence of pretext" with facts Piccirillo did not have. Doc. 100 at 1–2. He contends that, if the Court allows CSXT to introduce evidence not presented, he would "be forced to call witnesses who did not testify at [the] hearing to testify to the switch being properly tamped," which would be irrelevant and would "take considerable time." Doc. 100 at 2 n.2.

The Court **denies** the motion in limine. At a minimum, evidence that trains were actually delayed relates to Rhodes's and Hinnant's alleged August 1 decision. Through direct or cross examination, Barfield's counsel can clarify what Piccirillo had before him on September 17. If whether the switch was properly tamped is irrelevant as Barfield contends, he may not call witnesses to offer testimony about that subject.

7

C.   *Barfield's Third Motion*

Barfield seeks to exclude the correspondence his union sent to CSXT to appeal of his discipline. Doc. 85. He argues the correspondence is irrelevant because the discussions and decisions took place after the disciplinary action, did not involve the decisionmakers, and related to whether the discipline violated the collective bargaining agreement, not whether it violated Title VII. Doc. 85 at 3–4. He argues the risk of confusing the jury and wasting time substantially outweighs any minimal probative value because the jury might unfairly impute the substance of the discussions to Barfield or the decisionmakers, the evidence might make the jury think it needs to determine whether the discipline violated the collective bargaining agreement, and the parties would need to spend time presenting evidence on the grievance process. Doc. 85 at 4.

CSXT responds it does not seek to introduce evidence of correspondence between it and the union "except possibly one document showing that the final step of the grievance process, appeal to the Public Law Board, which could be used on cross examination of [Barfield] to establish that the final step was available to him but was not pursued." Doc. 91 at 1–2. Without this evidence, it contends, the jury might be confused about why the grievance process expired, and might even assume that CSXT somehow prevented Barfield from appealing the decision to an outside entity. Doc. 91 at 2. "In this way," it adds, "the evidence is relevant to [Barfield's] claim for punitive damages, because it shows that CSXT was not acting with malice, but instead took steps to protect Barfield's rights, which he did not fully exercise." Doc. 91 at 2.

Barfield replies most courts that have considered the issue have concluded evidence of an arbitration board's findings is irrelevant to a claim of discrimination. Doc. 102 at 3–5. He argues the jury would be confused about Barfield's appeal right if CSXT could introduce evidence of it. Doc. 102 at 5. He argues the grievance process is irrelevant to punitive damages because the appeal would have addressed only whether CSXT complied with the collective bargaining agreement. Doc. 102 at 5–6.

8

And he argues introduction of evidence he did not appeal would require him to call witnesses to explain the grievance process and why he did not pursue further review. Doc. 102 at 5 n.1.

The Court **denies** the motion in limine without prejudice to renewing any objection to the evidence at trial, where the relevancy and prejudicial impact of the evidence may be assessed in context. Neither side should discuss the evidence in opening statements.

### D.   *Barfield's Fourth Motion*

Barfield seeks to exclude evidence that Piccirillo disqualified other foremen who had failed to ensure the quality of their teams' work for longer than he disqualified Barfield. Doc. 86. He argues the other foremen are inadequate comparators because the conduct for which they were disqualified was insufficiently similar to the conduct proffered as the justification for Barfield's disqualification.[2] Doc. 86 at 2–5.

CSXT responds it intends to introduce the evidence to show its general practice of disqualifying foremen based on failure to ensure the quality of their teams' work and "to rebut Barfield's argument that the stated reason for [his] disqualification—failure to ensure the quality of his team's work—was merely a pretext." Doc. 93 at 1–2. It contends the evidence is "highly probative of whether Barfield's mistakes were a legitimate, nondiscriminatory reason for disqualification." Doc. 93 at 2. It observes courts have not applied the "similarly situated" standard for plaintiffs' comparator evidence to defendants' evidence supporting the legitimacy of their actions, but even if that standard applied, the comparators are sufficiently similar ("Like Barfield, the

---

[2]Barfield argues the other foremen are inadequate comparators because Brigman, not Piccirillo, was the true decisionmaker because he "involved himself in the disciplinary process that resulted in Barfield's disqualification." Doc. 86 at 2. In his reply, he withdraws that contention. *See* Doc. 101 at 6 n.1.

9

employees were disqualified by Piccirillo. Like Barfield, the employees were foremen. And, like Barfield, the employees failed to ensure the quality of their team's work."). Doc. 93 at 2–4.

Barfield replies "there is no logical reason that a plaintiff's comparator evidence should be treated differently than a defendant's comparator evidence" and complains CSXT's characterization of the alleged misconduct (a foreman's failure to ensure the quality of his team's work) is "so vague as to be meaningless." Doc. 101 at 2−7. He contends the comparator misconduct should be limited to failing "to ensure head block ties were tamped properly, resulting in trains allegedly being delayed" and to comparators with work histories similar to his. Doc. 101 at 6−7.

The Court **denies** the motion in limine. Even if the same comparator standards apply to a complainant trying to show pretext and an employer trying to show the absence of pretext, the comparators are sufficiently similar (same responsibilities, same decisionmaker, same general misconduct). Limiting comparators in the manner Barfield suggests would be too limiting. Through direct or cross examination, Barfield's counsel can pinpoint dissimilarities to argue any diminished relevancy.

E.   *CSXT's First Motion*

CSXT seeks to exclude comments Brigman had allegedly made to Barfield's wife and comments not included in the summary of his August 4 complaint. Doc. 80. It argues the comments to Barfield's wife, whether or not reported, are irrelevant because he could not have had an objectively reasonable belief he was complaining about unlawful harassment of him based on his sex when he reported them. Doc. 80 at 7–11. It argues evidence of harassment not included in the August 4 complaint is irrelevant because he did not report those other instances, so they cannot support his retaliation claim. Doc. 80 at 12–15. It argues testimony from Barfield about the details of his August 4 complaint should be excluded because it would be inconsistent

10

with his deposition testimony he could not recall the specifics of his complaint. Doc. 80 at 13–14. It argues his wife should not be permitted to testify because his claim does not depend on whether the alleged harassment occurred. Doc. 80 at 1, 15. It argues all of that evidence should be excluded because it would "lead the jury to believe that they should determine whether [CSXT] violated the law by virtue of [the] comments," prejudice the jury against it in light of the offensive nature of the comments, and "resurrect" Barfield's harassment claim. Doc. 80 at 11–12, 15–16. It argues testimony from Barfield's wife would be unduly prejudicial because it would be "emotionally charged and would appeal to the emotions of the jury." Doc. 80 at 16.

Barfield responds CSXT's argument for exclusion of Brigman's alleged comments "is nothing more than a second stab at summary judgment" and that the evidence, although prejudicial, is not unfairly so. Doc. 97 at 9–12. He states he does not intend to introduce Brigman's comments other than those described in a summary of the August 4 complaint and his and his wife's written statements unless CSXT opens the door to additional evidence by challenging the truthfulness of those accounts or challenging whether he reasonably or in good faith had believed Brigman's comments were unlawful. Doc. 97 at 13–15. He adds he intends to testify about his objection to Brigman's conduct in July 2013, Brigman's reaction to that objection, Brigman's bragging to Rhodes about his conduct, and Rhodes's reaction—evidence Barfield characterizes as "ancillary to Brigman's derogatory remarks." Doc. 97 at 13–14. He argues the evidence "is relevant to Brigman's and Rhodes'[s] true motive for disqualifying, which is relevant to prove pretext." Doc. 97 at 14.

CSXT replies Barfield's and his wife's written statements are irrelevant because they postdate Barfield's disqualification, and her statement is also irrelevant because she was not an employee. Doc. 105 at 1–2. It argues statements made during Barfield's disqualification hearing are irrelevant because the only issue during the hearing was whether Barfield had failed to adequately perform his job. Doc. 105 at 2. It argues the doctrine of "opening the door" would not apply to evidence or argument

that Brigman did not make the alleged comments or that Barfield did not have an objectively reasonable belief he complained of unlawful conduct. Doc. 105 at 2–3. It argues the specific alleged conduct has no probative value because the Court dismissed Barfield's harassment claim, and the danger of unfair prejudice is significant. Doc. 102 at 3–5. It argues evidence that Brigman bragged to Rhodes and that Barfield told Brigman he had crossed the line is irrelevant because neither alleged statement amounts to a complaint of harassment. Doc. 102 at 5.

For the reasons stated and with the limitations in Barfield's response (and at the final pretrial conference, e.g., Doc. 106 at 53),[3] the Court **denies** the motion in

---

[3]Barfield argues the law-of-the-case doctrine prohibits the Court from considering CSXT's motion because, in denying summary judgment on the retaliation claim, the Court necessarily rejected its argument that no reasonable person could have believed Brigman's alleged conduct was unlawful. Doc. 97 at 9 n.3.

The Court rejects the argument to the extent it is based on the law-of-the-case doctrine. "Under the law of the case doctrine, an issue decided at one stage of a case is binding at later stages of the same case." *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1288–89 (11th Cir. 2009) (internal quotation marks omitted). "Notably, however, a court's previous rulings may be reconsidered as long as the case remains within the jurisdiction of the district court. Consequently, law of the case applies only where there has been a final judgment." *Id.* at 1289 (internal quotation marks and citation omitted). Because case remains within the Court's jurisdiction and no final judgment has been entered, the Court may revisit any prior ruling, and law of the case is inapplicable.

Still, important here, "The rule in most of the national courts that have passed on the question is that where a judge of a United States District Court … while a case is on his calendar, renders a decision and makes a judicial order in such case, and thereafter the case is transferred to the calendar of another judge of such District Court, the latter judge should respect and not overrule such decision and order." *Stevenson v. Four Winds Travel, Inc.*, 462 F.2d 899, 904−05 (5th Cir. 1972). The rule is "essential to the prevention of unseemly conflicts, to the speedy conclusion of litigation, and to the respectable administration of the law, especially in the national courts, where many judges are qualified to sit at the trials, and are frequently called upon to act in the same cases." *Id.* To the extent CSXT's motion seeks reconsideration of any decision by the prior judge on any issue necessarily underlying denial of summary judgment on the retaliation claim, the undersigned declines to do so.

limine. At a minimum, the evidence provides background and context for the retaliation claim and relates to whether Barfield possessed a good-faith, reasonable belief that CSXT had discriminated against him because of his sex when he complained. It is not of "scant probative force, dragged in by the heels for the sake of its prejudicial effect." See Roark, 753 F.2d at 994 (quoted). The Court will instruct the jurors to ensure they understand they are deciding a retaliation claim only. If it appears the trial is veering off course from retaliation to harassment, the Court will take measures to strictly limit testimony about the alleged comments.

### F.   CSXT's Third Motion

CSXT seeks to exclude any evidence that Brigman had been fired from or left his previous employment based on allegations of sexual harassment.[4] Doc. 84. It argues the evidence is irrelevant to whether its employees retaliated against Barfield because Brigman was not involved in the disqualification decision, the prior alleged harassment was not directly related to Barfield, and it does not concern the same type of conduct at issue (retaliation). Doc. 84 at 2–4. It also argues the evidence would be unfairly prejudicial because it would invite the jury to find wrongdoing based on Brigman's alleged prior misconduct and confuse the trial issues. Doc. 84 at 4–5.

Barfield responds the evidence he intends to introduce is the contents of his wife's written statement alleging Brigman might have left his prior position with a police department amid allegations of sexual harassment to show Charron failed to follow up on the allegation. Doc. 98 at 2–3. Barfield contends the failure demonstrates his investigation was a "sham" intended to "bolster the perception that its discipline of Barfield was warranted and to undercut [his] claim for punitive damages." Doc. 98 at 1–2, 6–8. He adds it shows Charron interviewed only people suggested by Brigman.

---

[4]At the final pretrial conference, in light of Barfield's counsel's representation that Barfield does not intend to introduce evidence of Brigman's driving-while-intoxicated charge, the Court granted the motion in limine to the extent it sought exclusion of that evidence. Doc. 90 at 5.

Doc. 98 at 4–5. He argues any unfair prejudice would not substantially outweigh the probative value of the evidence, and redaction of the portion of Barfield's wife's statement at issue would be more confusing and prejudicial than leaving it in. Doc. 98 at 7–8.

CSXT replies the prior alleged sexual harassment is irrelevant because the statement postdated Barfield's disqualification, "is not probative of the quality of CSXT's investigation" because it was an unverified rumor, and Charron had done all he could to follow up on it by asking Brigman about it; and, even assuming the evidence has some minimal probative value, exclusion under Rule 403 is particularly appropriate because the evidence is unreliable and "is of a sexual nature." Doc. 104 at 2–5.

The Court **denies** the motion in limine for the reasons and with the limitations in Barfield's response.[5] This ruling does not contemplate any party seeking to introduce evidence of any reason Brigman left prior employment beyond the unredacted statement of Barfield's wife.

---

[5]CSXT asserts "Charron asked Brigman about the allegation, and Brigman denied it," citing Charron's and Brigman's depositions. Doc. 104 at 2. The cited portion of Brigman's deposition merely contains testimony denying he was fired or left his job based on sexual-harassment allegations; it has nothing to do with any conversation with Charron. See Doc. 46-14 at 100. In the cited portion of Charron's deposition, Charron testified he could not remember why the subject of Brigman's prior employment came up, and he had never heard that Brigman had been fired from his previous job based on sexual-harassment allegations. Doc. 46-16 at 64–65.

## IV. Conclusion

The Court **grants** Barfield's first motion in limine, Doc. 82; and **denies** Barfield's second, third, and fourth motions in limine, Docs. 83, 85, 86, and CSXT's first and third motions in limine, Docs. 80, 84.

**Ordered** in Jacksonville, Florida, on February 17, 2017.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:  Counsel of Record